RUSAK v ACME TOWNSHIP

Docket No. 64650. Submitted June 30, 1982, at Grand Rapids.—Decided April 18, 1983.

Eric and Judith Rusak and Allen and Marilyn Wuerful brought an action against Acme Township in the Grand Traverse Circuit Court for a declaratory judgment that the special assessment district established by defendant to fund a sanitary sewer project was not properly established and that the resulting special assessment was invalid. The trial court granted summary judgment for defendant. Plaintiffs then appealed to the Court of Appeals, which summarily affirmed by order dated September 9, 1981. Thereafter, plaintiffs applied for leave to appeal to the Michigan Supreme Court, which, in lieu of granting leave, vacated the order of summary affirmance and remanded the case to the Court of Appeals for plenary consideration, 414 Mich 905 (1982). *Held:*

1. A petition to establish a special assessment district within a township, to be valid, need not recite the precise geographical area and boundaries of the proposed district, recite the legal descriptions of the lands owned by each of the signers, recite the land area of the parcels owned by each of the signers, include the fee owners of property subject to executory land contracts, or recite the status of record title as of the date of the filing of the petition.

2. A township board, in establishing a special assessment district, must establish with finality the total land area in the district in order to verify that the originating petition was signed by record owners of lands constituting at least 51% of the total land area in the special assessment district. It is not necessary that each parcel of land and subdivision lot in the district be referenced and the precise percentage owned by those signing the initiating petitions be computed.

Affirmed.

R. M. MAHER, J., dissented. He would hold that the township .

REFERENCES FOR POINTS IN HEADNOTES
[1] 70 Am Jur 2d, Special or Local Assessments §§ 106,. 117.
[2, 3] 70 Am Jur 2d, Special or Local Assessments §§ 117, 118.

board has an affirmative duty to verify by adequate evidence that the initiating petitions contained signatures of persons owning at least 51% of the land in the special assessment district eventually established. He favors a prophylactic rule that, whenever a township board fails to base its determination of the sufficiency of the petition on adequate evidence, the trial court should remand for such a determination. In addition, he believes that a plaintiff is entitled to attorney fees when he secures such a remand because the purpose of the statute is to avoid this kind of court challenge.

He also found the record suggests that the township board did not follow the statutory procedure in another respect. The board is to perform three functions in the following order: (1) the board determines the boundaries of the assessment district; (2) the board determines the sufficiency of the petition; and (3) the board orders the preparation of an assessment roll. In the present case, the board apparently ordered the preparation of the assessment roll before determining the boundaries of the assessment district. He would remand this case to the trial court to determine whether the township board followed the statutory procedure.

OPINION OF THE COURT

1. TOWNSHIPS — SPECIAL ASSESSMENT DISTRICTS — PETITIONS.

A petition to establish a special assessment district within a township, to be valid, need not recite the precise geographical area and boundaries of the proposed district, recite the legal descriptions of the lands owned by each of the signers, recite the land area of the parcels owned by each of the signers, include the fee owners of property subject to executory land contracts, or recite the status of record title as of the date of the filing of the petition (MCL 41.721 *et seq.;* MSA 5.2770[51] *et seq.*).

2. TOWNSHIPS — SPECIAL ASSESSMENT DISTRICTS.

A township board, in establishing a special assessment district, must establish with finality the total land area in the district in order to verify that the originating petition was signed by record owners of lands constituting at least 51% of the total land area in the special assessment district (MCL 41.723[1][b], 41.725; MSA 5.2770[53][1][b], 5.2770[55]).

DISSENT BY R. M. MAHER, J.

3. TOWNSHIPS — SPECIAL ASSESSMENT DISTRICTS.

*A township board, in establishing a special assessment district,*

*must establish with finality the total land area in the district in order to verify that the originating petition was signed by record owners of lands constituting at least 51% of the total land area in the special assessment district; a determination of the sufficiency of the originating petition should be based on adequate evidence.*

Eric J. Rusak, *in propria persona.*

*Blakeslee & Chambers* (by *John R. Blakeslee),* for defendant.

Before: M. J. KELLY, P.J., and R. M. MAHER and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. The central issue in this case is whether the defendant township properly established a special assessment district to fund a sanitary sewer construction project. Plaintiff landowners filed a complaint seeking a declaratory judgment that the district was not properly established and that the resulting special assessment was invalid. The trial court granted defendant summary judgment under GCR 1963, 117.2(1) and 117.2(3). Plaintiffs then appealed to this Court, which summarily affirmed by order dated September 9, 1981. Thereafter, plaintiffs applied for leave to appeal to the Michigan Supreme Court. On May 21, 1982, that Court, in lieu of granting leave, vacated the order of summary affirmance and remanded the case to this Court for plenary consideration, 414 Mich 905 (1982).

In March and April, 1977, petitions seeking the construction of sanitary sewers and the creation of a special assessment district were filed with defendant's board of trustees. The petitions purported to be signed by the record owners of more than 51% of the total land area in the proposed special

* Circuit judge, sitting on the Court of Appeals by assignment.

assessment district as described in the petitions. The proposed special assessment district was described as "consisting of all assessable property abutting the above-described sewer line". The sewer lines were identified as follows in "Exhibit A" attached to the petitions:

| "STREET, ROAD OR SUBDIVISION | LIMITS |
|---|---|
| Greenwood Drive | From Holiday Hills Road, Northeast approximately 455 feet to boundry [sic] of Sherwood Estates Subdivision |
| Sherwood Estates Subdivision | Along all streets within Sherwood Estates Subdivision |
| Sherwood Estates II Subdivision | Along all streets within Sherwood Estates Subdivision |
| Holiday Pines Subdivision | Holiday Pines Road from Holiday Hills Road to the intersection of Cedarwood Lane, approximately 900 feet; Holiday Court from Holiday Pines Road to the end, approximately 170 feet |
| Holiday Pines II Subdivision | Along Cedarwood Lane within Holiday Pines II Subdivision |
| Holiday Hills Road | Along Holiday Hills Road from the railroad to the Township line near Holiday Hills Ski Area Buildings" |

On December 5, 1977, the township board adopted Resolution No. 1, which found that the petitions had been verified as to "signature, ownership and percentage requirements" and directed an engineering firm to prepare and file with the board plans showing the improvement, location and estimates of the cost of the sewer project.

On March 21, 1978, the township board adopted Resolution No. 2 which tentatively declared the board's intention to proceed with the project, tentatively designated the special assessment district, and ordered that a hearing be held to hear objections to the petitions, the project itself and the special assessment district. The resolution further required that the township clerk cause notice of hearing to be published according to the statute.

On April 5, 1978, the board adopted Resolution No. 3, which approved the plan submitted by the engineering firm, finally determined the lots and parcels of land which would constitute the special assessment district and directed the township supervisor to prepare a special assessment roll and to submit it to the board.

On April 5, 1978, the board also adopted Resolution No. 4, which acknowledged that the township supervisor had prepared and reported the special assessment roll, assessed the cost of the project against the property benefited and ordered the township clerk to cause notice of a hearing at which objections could be voiced to the assessment roll.

On April 21, 1978, the board adopted Resolution No. 5, in which the board found the assessment roll to be fair and equitable, provided that the assessments would be paid in 20 equal annual installments and ordered the treasurer to collect the assessments in accordance with the resolution.

On May 3, 1978, plaintiffs filed their complaint alleging that the petition submitted to the board seeking construction of the sanitary sewers was legally insufficient for the following reasons:

"a. The petition, on its face, does not recite the geographical area to be affected by the petition but, rather, merely sets forth a description including lineal distances along particular streets, from which description it is impossible to determine the total geographical area upon which the 51% requirement of § 3(1)(b) of 1954 PA 188 (MCL 41.723[1][b]) is computed.

"b. The petition fails, likewise, to recite the legal description of the lands owned by numerous of the signatories.

"c. The petition fails to recite the land area of the parcels owned by the various signatories.

"d. The petition fails to include fee owners of numerous lots reflected in the petition and signed by land contract purchasers.

"e. The petition, as plaintiffs are informed and believe, lacks both the 65% requirement of § 2 of 1923 PA 116 (MCL 41.412), as well as the 51% requirement of § 3(1)(b) of Act 188; however, plaintiffs, alternatively, reallege that the percentage of signatories, with respect to land area, cannot be determined either from the petition, or from the resolutions of the township board adopted pursuant thereto.

"f. The petition fails to recite the status of the record title to the participating parcels as of the date of the filing of the petition with the township.

"g. That, by reason of the above, the petition is further insufficient because it fails to reflect, on its face, the jurisdictional basis upon which the township could have proceeded with the project, assuming the contents thereof to be true."

Defendant moved for summary judgment under both GCR 1963, 117.2(1) for failure to state a claim upon which relief could be granted and GCR 1963, 117.2(3) asserting that there was no genuine issue

as to any material fact and the defendant was entitled to judgment as a matter of law.

The trial court concluded that ¶¶ a, b, c, d, f and g failed to state claims upon which relief could be granted because nothing in the governing statute required that the petitions contain what plaintiffs correctly alleged was absent. The trial court found that ¶ e did state a claim upon which relief could be granted but that there was no genuine issue as to any material fact with respect to it and therefore granted summary judgment as to that paragraph under GCR 1963, 117.2(3). An additional count in the complaint attacking the validity of the assessment roll was left intact but was dismissed by stipulation of the parties apparently to permit appeal from the ruling granting summary judgment.

The making of public improvements by townships in this state is governed by MCL 41.721 *et seq.;* MSA 5.2770(51) *et seq.* The statute delineates the following procedure in the case of sewers.

First, a group of landowners in a particular area of the township files a petition requesting that the township establish a sewer system. The petitions must be signed "by record owners of lands constituting at least 51% of the total land area in the special assessment district as finally thereafter established by the township board". MCL 41.723(1)(b); MSA 5.2770(53)(1)(b).

Second, the township board, if it desires to proceed with the petition, directs a registered engineer to prepare plans showing the improvement and its location with an estimate of cost. MCL 41.724; MSA 5.2770(54).

Third, after the plans and estimates are received, the township board orders those to be filed with the clerk and, if it desires to proceed further

with the improvement, the board adopts a resolution tentatively declaring its intention to make the improvement and tentatively designating the special assessment district against which the cost of the improvement will be assessed. MCL 41.724; MSA 5.2770(54).

Fourth, the township board then fixes a time and place to hear objections to the petition, to the improvement and to the special assessment district and causes notice of that hearing to be given by publication. MCL 41.724; MSA 5.2770(54).

Fifth, the board conducts a hearing at which it considers objections to the petition, to the improvement or to the special assessment district. At that hearing, the board may revise, correct, amend or change the plans, the estimate of cost or the special assessment district. However, the improvement or plans cannot be modified so as to add property to the district or increase the cost more than 10% without notification to affected landowners. MCL 41.724; MSA 5.2770(54).

Sixth, if the township board still desires to proceed with the improvements, it must pass a resolution to approve the plans and estimates as originally presented or as revised and must also determine finally the sufficiency of the petition for the improvement. At this point the board also finally determines the special assessment district and directs the supervisor to make a special assessment roll. MCL 41.725; MSA 5.2770(55).

The special assessment roll is then filed in the office of the township clerk. Before confirming the roll, the township board appoints a time and place for a hearing on any objections to the roll and causes notice of that hearing to be published. MCL 41.726; MSA 5.2770(56).

After the special assessment roll is confirmed by

the township board, the board may provide that the assessment be paid in not more than 30 installments. MCL 41.727; MSA 5.2770(57).

The trial court correctly determined that the petitions were not legally insufficient by virtue of the omissions alleged in ¶¶ a, b, c, d, f and g of plaintiffs' complaint. The statute simply does not require that the petitions contain the information plaintiffs accurately claim they lack.

In ¶ a, it is alleged that:

"a. The petition, on its face, does not recite the geographical area to be affected by the petition but, rather, merely sets forth a description including lineal distances along particular streets, from which description it is impossible to determine the total geographical area upon which the 51% requirement of § 3(1)(b) of 1954 PA 188 (MCL 41.723[1][b]) is computed."

In this regard, § 3(1)(b) of the statute, MCL 41.723(1)(b); MSA 5.2770(53)(1)(b), requires that the petitions be signed by "record owners of lands constituting at least 51% of the total land area in the special assessment district *as finally thereafter established by the township board"*. (Emphasis added.) The special assessment district is "finally thereafter established" at the hearing held pursuant to § 4, MCL 41.724; MSA 5.2770(54). The statute envisions that the petition will serve as merely the first step in a rather elaborate and lengthy process designed to determine the need for and assess the cost of public improvements. The requirement that the petition be signed by owners of 51% of the land eventually assessed is intended to insure that the process is not undertaken without substantial support by those likely to bear the ultimate financial burden. In that regard, it is sufficient if the petition merely *alleges* compliance

with the percentage requirement of § 3(1)(b); it is
not necessary that the petition arithematically
*demonstrates* compliance with that section. *Cf.
Grand Rapids & I R Co v Round,* 220 Mich 475;
190 NW 248 (1922); *Nichols v Tallmadge,* 260 Mich
576; 245 NW 521 (1932). In fact, it would be
logically impossible for the petition to demonstrate
compliance because at the time the petition is filed
its signers do not and cannot know the precise
composition of the special assessment district "as
finally thereafter established". It is at the time of
the public hearing mandated by § 4 that affected
landowners have an opportunity to require that
proponents of the improvement demonstrate that
the percentage requirement of § 3(1)(b) has been
met. For it is at this point that the proposed
special assessment district is finally established
and a specific factual determination can be made
as to whether owners of at least 51% of the
property in it have signed the petition initially.
That of course is the reason that § 5 of the act,
MCL 41.725; MSA 5.2770(55), provides that:

"After the hearing provided for in [§ 4] * * * the
township board * * * shall by resolution * * * deter-
mine the sufficiency of the petition for the improvement
* * * the sufficiency of the petition shall not thereafter
be subject to attack except in an action brought in a
court of competent jurisdiction within 30 days after the
adoption of the resolution determining such suffi-
ciency."

The trial court's finding that the statute did not
require that the petition demonstrate the precise
manner in which the 51% requirement had been
met was correct. Summary judgment was there-
fore proper under GCR 1963, 117.2(1). Moreover, as
discussed later in this opinion, even if the statute

did require that the petition allow precise computation of the percentage of land owned by the signers, any interested party *could* determine from the petition and publicly available records the precise geographic area and boundaries of the special assessment district as proposed in the petition.

Paragraphs b, c, d, f and g of the complaint alleged, respectively, that the petitions failed to recite the legal description of lands owned by each of the signers, failed to recite the land area of the parcels owned by each of the signers, failed to include the fee owners of property subject to executory land contracts, failed to recite the status of record title as of the date of the filing of the petition, and for these reasons was jurisdictionally insufficient to permit the township to proceed with the project.

As noted earlier, there is nothing in the statute that requires the information which plaintiffs correctly claim was absent here. Again, the trial court was correct in granting summary judgment in this regard under GCR 1963, 117.2(1).

More difficult is plaintiff's second claim of error, that "the township board failed to determine the actual land area of the special assessment district as required under MCL 41.723(b)".

Although somewhat ambiguous, this assertion apparently challenges the trial court's finding of no genuine issue of material fact as to ¶ e of the complaint. That paragraph alleges, as noted above, that:

"* * * the percentage of signatories with respect to land area, cannot be determined either from the petition, or from the resolutions of the township board adopted pursuant thereto."

Summary judgment was granted for defendant on the basis of affidavits of a professional engineer, an employee of a title company, the township supervisor and the director of a community planning firm, stating that the special assessment district was computed to contain 95.883 acres and that the signers of the petition were record owners of 55.256 acres, or 57.6% of the geographical area of the district.

We agree with defendant's assertion and the trial court's findings that there existed no genuine issue that the statutory percentage requirement of MCL 41.723(1)(b); MSA 5.2770(53)(1)(b) was satisfied. Plaintiff's allegation that the petition failed to recite the depth dimension of the proposed district but instead merely stated that the district ran "along" certain roads is not meritorious. First, as noted above, there is no requirement that the petition describe in detail the geographic boundaries of the proposed district. Further, the full legal descriptions and boundaries of the properties adjacent to the described roads could be obtained from property tax rolls or subdivision plats which are all matters of public record. In other words, although the petitions standing alone may have been insufficient to describe the geographic boundaries of the proposed district, it is clear that the petitions when read in light of the available public records did describe a specific geographic area.

Plaintiff is correct, however, in asserting that it is incumbent upon the township board to establish with finality "the total land area in the special assessment district", MCL 41.723(1)(b); MSA 5.2770(53)(1)(b), after the hearing required by § 4 of the act, MCL 41.724; MSA 5.2770(54). This final determination of the total land area in the special assessment district is an indispensible condition

precedent to the board's subsequent determination, required by § 5, MCL 41.725; MSA 5.2770(55), of whether 51% of the landowners in the district signed the original petitions as mandated by § 3(1)(b), MCL 41.723(1)(b); MSA 5.2770(53)(1)(b).

As noted earlier, the board here adopted Resolution No. 3 on April 5, 1978, finally determining the composition of the special assessment district and reciting, in conclusory fashion, that the 51% requirement of § 3(1)(b) had been met.

Although it undoubtedly would have been preferable for the board in this case to have specifically referenced each parcel of land and subdivision lot in the district and to have then computed precisely the percentage owned by those who signed the petitions, the board's failure to have done so is not fatal.

First, the precise composition and boundaries of the district could be determined by reference to publicly recorded plat maps and title documents.

Second, the affidavits filed in support of defendant's motion for summary judgment establish that owners of 57.6% of the assessable land in the district as finally constituted in fact signed the petitions.

Third, the minutes of the April 5, 1978, board meeting disclose that Resolution No. 3 (finally determing the composition of the district) was adopted at the same meeting as Resolution No. 4 (which recites that the supervisor has reported the special assessment roll to the board). Thus, when that meeting came to an end at 9:35 p.m., any interested citizens would have access to both the general description in Resolution No. 3 and the proposed roll itself, specifically referencing each constituent lot and describing by metes and bounds each component unplatted parcel.

There is no genuine issue as to whether owners of at least 51% of the property in the district, as finally established, signed the petitions. They did, and the trial court correctly granted summary judgment with regard to this issue under GCR 1963, 117.2(3).

We note in closing that plaintiffs, acting *in propria persona,* have eloquently highlighted a number of significant difficulties inherent in the present statutory scheme. Not the least of these is the fact that a few people (developers, for example) may commit many (prior, local residents, for example) to expensive public improvements which may disproportionately benefit the few. This is so, of course, because the percentage requirements of § 3(1)(b) refer to the amount of land owned and not the number who own. It should be emphasized, however, that the township board retains the discretion not to proceed with the improvement regardless of the percentage of land owned by those who signed the petitions. See MCL 41.724; MSA 5.2770(54), and MCL 41.725; MSA 5.2770(55). To the extent board members are elected by people and not land, it is likely that the views of all affected residents will be considered in decisions by township officials respecting public improvements.

The decision of the trial court is affirmed. No costs, a public question being involved.

M. J. KELLY, P.J., concurred.

R. M. MAHER, J. *(dissenting).* I respectfully dissent.

First, MCL 41.725; MSA 5.2770(55) provides in pertinent part:

"After the hearing provided for in the preceding section, if the township board then desires to proceed

with the improvement, it shall by resolution determine
to make the same and shall approve the plans and
estimate of cost as originally presented or as revised,
corrected, amended or changed, and *shall also deter-
mine the sufficiency of the petition* for the improvement
\* \* \*." (Emphasis supplied.)

In my view, this language mandates a formal
finding by the board that the petition is sufficient.
This determination must be made at the same
time as, or prior to, the final resolution approving
the project.

In this case, the township board's final resolu-
tion did contain a clause to the effect that such a
determination had been made. Nevertheless, a
mere conclusory recitation that the petition has
been found adequate is insufficient where the
board has no reasonable basis for making such a
finding. The board must at least base its decision
on evidence that the petition is sufficient. That is,
the board must ground its decision on a computa-
tion that owners of at least 51% of the land
constituting the finally approved project signed the
petition.

The policy embodied in MCL 41.725; MSA
5.2770(55), is to forestall unnecessary legal chal-
lenges by landowners to the sufficiency of a peti-
tion *after* the board has resolved to go ahead with
the improvement. The statute accomplishes this
goal by requiring the board to determine the suffi-
ciency of the petition based on adequate evidence.
This goal is not achieved, however, when the board
merely recites that the petition is sufficient. This
action will not satisfy a landowner who believes
that the petition is not sufficient. The aggrieved
landowner may, then, choose to vindicate his belief
in court.

The appellants in the present case alleged in

their complaint that the petition failed to meet the
51% requirement. In its motion for summary judg-
ment, the defendant presented an affidavit that
owners of 58% of the land involved signed the
petition. I agree with the majority that there was
no genuine issue as to whether the petition was
sufficient. However, a genuine issue did exist as to
whether the board determined the sufficiency of
the petition on adequate evidence. The appellants
should have been given a chance to show that the
board had failed in its responsibility to make such
a determination.

I favor a prophylactic rule that, whenever a
township board fails to base its determination of
the sufficiency of the petition on adequate evi-
dence, the trial court should remand for such a
determination. In addition, I believe that a plain-
tiff is entitled to attorney fees when he secures
such a remand, because the purpose of the statute
is to avoid this kind of court challenge.

Second, the record suggests that the township
board did not follow the statutory procedure in
another respect. MCL 41.725; MSA 5.2770(55) indi-
cates that the board is to perform three functions
in the following order: (1) the board determines
the boundaries of the assessment district; (2) the
board determines the sufficiency of the petition;
and (3) the board orders the preparation of an
assessment roll. In the present case, the board
apparently ordered the preparation of the assess-
ment roll before determining the boundaries of the
assessment district.

In conclusion, I note that the issues to which I
have devoted my dissent were not raised by appel-
lants. Nevertheless, I believe that this Court needs
to address these issues because the appellants are
proceeding *in propria persona* and this Court

should enforce the procedure set forth in the statute.

I would remand this case to the trial court to determine whether the township board followed the statutory procedure.